IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| TENECA HINES, | * |
| Plaintiff, | * |
| | * |
| v. | Civil Action No. 8:23-2815-AAQ |
| | * |
| EVAN SPATH, | * |
| Defendant. | * |
| | * |

******

## MEMORANDUM OPINION AND ORDER

This is a case concerning a car collision. Plaintiff Teneca Hines alleges Defendant Evan Spath negligently drove a vehicle in which she was a passenger, causing injuries to her lower body and spine. Pending before the Court is Defendant's Motion for Summary Judgment. ECF No. 57. Defendant argues that Plaintiff has failed to properly designate an expert, and as a result, cannot show the accident caused her injuries. Defendant's Motion has been fully briefed, and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, Plaintiff failed to comply with the rules governing expert disclosures, but the Court will provide her an opportunity to remedy these deficiencies within twenty-one days. Accordingly, Defendant's Motion shall be denied without prejudice, with an opportunity to re-file raising the same arguments and any additional arguments he believes appropriate.

## BACKGROUND

**I.     Factual Background**

On July 31, 2022, a young woman ordered a Lyft rideshare car to transport Plaintiff from a hotel in Washington, D.C. to a nearby airport in Virginia. ECF No. 57-1, at 3-4; ECF No. 57-2. Defendant accepted the ride, and shortly thereafter Plaintiff entered his vehicle. ECF No. 57-1, at 4-5. Plaintiff livestreamed the duration of the ride on Facebook. *Id.* at 4.

The parties disagree as to the events that occurred during the fourteen-minute drive to the airport. ECF No. 57, at 1-3; ECF No. 58, at 1; ECF No. 57-2. According to Plaintiff, Defendant drove the car into "a crowd of people" near the White House, swerving to such a degree that "all four tires came off the roadway." ECF No. 57-1, at 5, 7. Additionally, Defendant drove quickly and "sw[ung] around corners." *Id.* at 5. As a result of the sudden movement, Plaintiff was flung from her position in the rear passenger seat to the rear middle seat. *Id.* at 7. She "cr[ied] and scream[ed]." ECF No. 58-1, at 6. According to Defendant, towards the beginning of the drive, the car experienced a "bump." ECF No. 57, at 1-2; ECF No. 57-3, pt. 2 at :30 (video livestream of drive). The rest of the drive proceeded without incident.[1] ECF No. 57, at 1-2; ECF No. 57-3. As the car arrived at the airport, Plaintiff requested Defendant's insurance information, which he provided. ECF No. 57, at 2; ECF No. 57-3.

---

[1] Defendant states that Plaintiff "showed no visible signs of pain and discomfort" and that "[s]he did not make any complaint of pain to Spath," citing the Facebook live video for this proposition. ECF No. 57, at 2. This mischaracterizes the video. Less than a minute after the "bump," Plaintiff states "I just had neck surgery, I don't need [to] be . . . hit." ECF No. 57-3, pt. 2 at :57 to 1:05. Further, towards the end of the ride, Plaintiff asked Defendant for his insurance information and informed him that she recently had neck surgery and that "when [he] hit [the] curb, it caused for [her] neck and [her] head to hurt." *Id.*, pt. 1 at :51 to 1:07, 3:40-4:00 ("[M]y head hurt and my neck."), 2:15 ("[W]hen you hit that curb it caused sharp pain in me.").

Plaintiff then flew to Florida, where she sought medical treatment. ECF No. 58-1, at 9-10. At that time, according to Plaintiff, she experienced pain in her lower back, legs, and ankles. *Id.* at 10.

Unfortunately, Plaintiff was involved in several accidents prior to and after the car ride on July 31, 2022. Almost a year prior, on July 20, 2021, Plaintiff injured her neck in a separate car accident and underwent neck surgery. ECF No. 58-1, at 14; ECF No. 57-4, at 1-2; ECF No. 57-6. Plaintiff was also involved in another car accident in April 2022, after which she complained of pain in her face and neck, in addition to headaches. ECF No. 57-5, at 1, 5. Further, after the July 2022 incident, Plaintiff was assaulted with a baseball bat and experienced a third car accident, suffering additional injuries to her head and neck. ECF No. 57-1, at 14, ECF No. 57-4, at 2; ECF No. 58, at 4.

## II.   Procedural History

In May 2023, Plaintiff filed this lawsuit against Lyft, Inc. ("Lyft") and Defendant in the Circuit Court for Prince George's County, Maryland, alleging negligence in the operation of the motor vehicle during the July 31, 2022, drive to the airport and seeking "an amount greater than . . . $75,000."[2] ECF No. 1-2, at 5. In October 2023, Defendant removed the case to this Court, ECF No. 1, and filed an Answer denying liability, ECF No. 4. The next month, Plaintiff dismissed Lyft from her lawsuit and proceeded solely against Mr. Spath. ECF Nos. 13, 15.

---

[2] Mr. Spath is listed as John Doe in the initial Complaint. ECF No. 1-2, at 1. Plaintiff later amended her Complaint to include Defendant's name. ECF No. 1-4.

The parties proceeded to discovery.[3]  Plaintiff submitted her Rule 26(a)(2) disclosures on February 2, 2024.[4]  ECF No. 58-5, at 6.  Plaintiff designated five "Hybrid Treating/Expert Witnesses," all to testify on the issue of causation.  *Id.* at 1 (Dr. Pablo W. Concepcion . . . will [t]estify that the Plaintiff's injuries . . . are causally related to the motor vehicle accident); 2 (same, as to Dr. Blake Fenton), 3 (same, as to Amanda Bergin, APRN, and Dr. David Edge, DO); 4 (same, as to Dr. Jonathan C. Eugenio, M.D.).  Plaintiff did not attach any signed expert reports to her disclosure.  *See id.*; ECF No. 57, at 3.

Defendant filed his Motion for Summary Judgment on March 25, 2025, and the Motion is now fully briefed.  ECF Nos. 57, 58, 59.

## STANDARD OF REVIEW

The Court will grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.

---

[3] The parties raised several discovery disputes with the Court, including a Motion to Compel, ECF No. 34, and a Motion for Sanctions, ECF No. 39.  The Court resolved both; neither is directly relevant to the present Motion.  ECF Nos. 37, 43, 44.

[4] Defendant states that Plaintiff submitted her disclosures on March 15, 2024.  ECF No. 57, at 2-3.  This seemingly references the date on which Plaintiff mistakenly filed her disclosures on the docket, ECF No. 30, as opposed to the date of service on Defendant, which is listed in the document as February 2, 2024, *id.* at 6.

1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the nonmoving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998).  "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *Scott v. United States*, No. PJM-06-2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007).  Such factual support must go beyond "conclusory statements with no evidentiary basis." *Manokey v. Reliable Contracting Co., Inc.*, No. EA-23-1161, 2025 WL 660061, at *3 (D. Md. Feb. 28, 2025) (quoting *Alston v. Astrue*, No. L-10-3446, 2012 WL 665982, at *4 (D. Md. Feb. 28, 2012), aff'd, 474 F. App'x 390 (4th Cir. 2012)).  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *See Anderson*, 477 U.S. at 256–57.

## ANALYSIS

"[A] claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011).  Defendant focuses on the third element, arguing that Plaintiff fails to present proper evidence regarding causation.  ECF Nos. 57, 50.  As explained below, this case requires expert testimony because it is medically complex, and Plaintiff failed to properly disclose her experts pursuant to Federal Rule of Civil Procedure 26.  However, rather than granting Defendant summary judgment at this time, the Court will give Plaintiff twenty-one days to remedy her disclosure, at which point Defendant

may renew his Motion accordingly. After addressing Choice of Law, the Court discusses each issue in turn.

I. **District of Columbia Law Governs This Case.**

The parties do not clarify which jurisdiction's laws applies to Plaintiff's negligence claim; both apply Maryland law without further explanation. ECF Nos. 57, 58, 59. A federal district court sitting in diversity jurisdiction—as the Court is here—must apply "the choice of law rules of the forum state."[5] *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). In this case, the forum state is Maryland. Under Maryland law, "tort claims are governed by the law of the state where the alleged harm occurred ('*lex loci delicto*')." *Danner v. Int'l Freight Sys. of Wa., LLC*, 855 F. Supp. 2d 433, 447 (D. Md. 2012) (citing *Proctor v. WMATA*, 990 A.2d 1048, 1068 (Md. 2010)). Further,

> [w]here the parties to an action fail to give the statutory notice of an intent to rely on foreign law, and where it is clear that one or more issues in the case are controlled by another jurisdiction's law, a court in its discretion may exercise one of two choices with respect to ascertaining the foreign law. First, the court may presume that the law of the other jurisdiction is the same as Maryland law. Alternatively, the court may take judicial notice of the other state's law.

*Chambco v. Urban Masonry Corp.*, 659 A.2d 297, 299 (Md. 1995).

The record in this case clearly indicates that the harm—the impact to Plaintiff—occurred in the District of Columbia; accordingly, the Court takes judicial notice of and applies District of Columbia law. *London v. WMATA*, No. AAQ-21-1497, 2023 WL 3727058, at *1 n.2 (D. Md. May 30, 2023) (reasoning the harm in negligence action occurred in the location of the car accident). The Lyft receipt indicates the car ride began in the District of Columbia and concluded

---

[5] The Court possesses diversity jurisdiction because there is complete diversity of the parties: Plaintiff is a citizen of Florida and Defendant is a citizen of Virginia. 28 U.S.C. §1332(a); ECF No. 5, at 1. Further, the amount in controversy exceeds the $75,000 requirement. 28 U.S.C. § 1332(a); ECF No. 5, at 5 (requesting damages "greater than" $75,000).

in Virginia. ECF No. 57-2. Plaintiff's Facebook livestream shows the moment of impact occurred at the start of the drive. ECF No. 57-3, pt. 2 at :31. In her deposition, Plaintiff states that the incident occurred near the White House, which is in the District of Columbia.[6] ECF No. 58-1, at 5. After the incident, the video captures the car moving through the National Mall, passing by the Lincoln Memorial before crossing into Virginia via the Arlington Memorial Bridge. ECF No. 57-3, pt. 2 at 1:49 to 1:55 (showing the Lincoln Memorial), 2:38 to 2:40 (same), 2:50 to 3:48 (showing the Arlington Memorial Bridge).

II.     **Plaintiff Must Present Expert Testimony to Support Causation.**

Under District of Columbia law, a plaintiff must introduce expert testimony "[i]n cases presenting medically complicated questions of causation because of multiple and/or pre-existing causes for a plaintiff's injuries." *Structural Pres. Sys., Inc. v. Petty*, 927 A.2d 1069, 1075 (D.C. 2007) (citing *Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 (D.C. 1988)). This requirement "'prevent[s] the jury from engaging in speculation" as to whether and to what extent the allegedly unlawful acts at issue—as distinct from other potential factors—caused plaintiff's harm." *Halcomb v. Woods*, 610 F. Supp. 2d 77, 85 (D.D.C. 2009) (quoting *Baltimore*, 545 A.2d at 1231). There are, however, exceptions. A case may proceed without expert testimony if "(1) the [injury] first emerged coincidentally with or very soon after the negligent act, or (2) the [injury]

---

[6] Federal Rule of Evidence 201 allows the Court to take judicial notice of the jurisdiction in which the White House, National Mall, and Lincoln Memorial are located, because these are "fact[s] that [are] not subject to reasonable dispute because [they]. . . can be accurately and readily determined from sources whose accuracy cannot be questioned." Government maps available online indicate each landmark is located in the District of Columbia. *See* Maps, Nat'l Park Serv., https://perma.cc/RLY2-ZS9W; *Zhang v. Lockheed Martin Corp.*, No. TDC-13-3898, 2014 WL 6646979, at *1 n.1 (D. Md. Nov. 21, 2014) (taking judicial notice of a publicly available map); *Montgomery v. Conmed, Inc.*, No. ELH-13-930, 2016 WL 3647609, at *4 n.9 (D. Md. June 29, 2016) (same).

was of a type which by its very nature reflected its cause, or (3) the cause of the injury related to matters of common experience, knowledge, or observation of laymen." *Structural Pres. Sys., Inc.*, 927 A.2d at 1076 (quoting *Baltimore*, 545 A.2d at 1231).

This case requires expert testimony to establish causation because Plaintiff has a complex medical history with several pre-existing conditions and subsequent injuries to the same parts of her body. In relation to the July 31, 2022, occurrence, Plaintiff claims injury to her lower back, legs, and ankles, as well as headaches. ECF No. 58, at 3. These injuries may be connected to the car ride, but as Defendant notes, other causal mechanisms could play a role—such as Plaintiff's three other car accidents, prior neck surgery, and subsequent assault. ECF No. 57, at 2. Many of Plaintiff's symptoms pre-existed the accident. *See Baltimore*, 545 A.2d at 1231-32 (reasoning case required expert testimony in part due to plaintiff's pre-existing injuries and symptoms); ECF No. 57-4, at 3 (independent medical examination noting Plaintiff "suffers from chronic neck and back pain"); ECF No. 57-5 (medical records following April 22, 2022, accident noting neck pain, headaches, and pain in the face); ECF No. 58 1, at 11 (Plaintiff stating she "had migraines in [her] life before," suffered them more frequently after July 31, 2022, and that doctors indicated they could be caused by her need for glasses). This case is akin to the circumstances in *Gray Line, Inc. v. Keaton*, 428 A.2d 360 (D.C. 1981), where expert testimony was required to establish "that the particular collision [plaintiff] had with [defendant's] bus directly caused permanent injury to her back" because plaintiff had been involved in multiple other car accidents and "incurred injury to her back" before and after the incident at issue. *Id.* at 362.

Additionally, for the same reason, the rule's exceptions do not apply. First, the record is mixed with respect to the temporal proximity of the incident and the complained-of injuries. Plaintiff testified that she sought medical attention within a day of the relevant car ride, going to

8

the hospital after her flight back to Florida landed. ECF No. 58-1, at 10. She sought further treatment from her Chiropractor within a week of the incident for head, neck and lower back pain and shoulder tension, ECF No. 58-6, at 3 (noting August 3, 2022 appointment). Together, these would satisfy the exception, were it not for the fact that she had been treated extensively for similar injuries prior to the accident. *See e.g.* ECF No. 58-7, at 1 (recounting that the physician had previously performed cervical spine fusion on the Plaintiff as a result of a previous car accident). Thus, the record does not support a finding that all of Plaintiff's injuries emerged coincidental to, or shortly after, the alleged negligent act.

Finally, Plaintiff's injuries are not "of a type which by [their] very nature reflected [their] cause," nor is "the cause of the injury related to matters of common experience, knowledge, or observation of laymen." *Structural Pres. Sys., Inc.*, 927 A.2d at 1076 (quoting *Baltimore*, 545 A.2d at 1231). Although the parties dispute what exactly occurred during the car ride on July 31, neither Plaintiff's nor Defendant's version of events supports an intuitive connection. Plaintiff states she was slung from the passenger seat to the middle seat; Defendant suggests a small bump occurred. ECF No. 57, at 2; ECF No. 58, at 2. Neither narrative presents facts sufficient for a jury to intuitively understand the causal mechanism between the car ride and Plaintiff's continued ankle pain, lower back pain, neck pain, and headaches years after the accident, given Plaintiff's prior and subsequent medical history affecting similar parts of her body. Accordingly, Plaintiff must present expert testimony to establish causation.[7]

---

[7] Application of Maryland law does not alter this outcome. As Defendant cites in his Motion, Maryland has a similar rule requiring expert testimony "[w]here the cause of an injry [sic] claimed to have resulted from a negligent act is a complicated medical question." *Lins v. United States*, No. ELH-17-2163, 2024 WL 1604494, at *14 (D. Md. April 12, 2024) (quoting *Wilhelm v. State Traffic Safety Comm'n*, 185 A.2d 715, 719 (Md. 1962)); ECF No. 57, at 5-6; ECF No. 59, at 1-2. For the reasons described above, this is such a case due to Plaintiff's extensive medical history and the lack of close temporal relationship between the injuries and the alleged negligent act. *See*

### III. Plaintiff's Expert Disclosures Do Not Comply With Rule 26.

Federal Rule of Civil Procedure 26(a)(2)(B) requires any witness "retained or specially employed to provide expert testimony in the case" to submit "a written report—prepared and signed by the witness" including, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). However, "[h]ybrid witnesses—fact witnesses with expertise that will inform their testimony—do not fall under Rule 26(a)(2)(B)'s purview" and are instead subject to a less onerous disclosure requirement detailed in Rule 26(a)(2)(C). *Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022); *see also* Loc. R. 104.10 ("[T]he disclosures required by Fed. R. Civ. P. 26(a)(2)(B) . . . need not be provided as to hybrid fact/expert witnesses such as treating physicians."). Plaintiff puts forth her treating physicians as hybrid witnesses, meaning they are subject to Rule 26(a)(2)(C). *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997) ("[A] treating physician is the quintessential example of a hybrid witness."); *Barnes v. Costco Wholesale Corp.*, No. JKB-18-3377, 2019 WL 3767506, at *2 (D. Md. Aug. 9, 2019) ("Treating physicians are generally considered hybrid witnesses and, thus, their testimony does not require the disclosure of full-fledged expert reports pursuant to Rule 26(a)(2)(B)."); ECF No. 58-5 (describing all five proposed hybrid witnesses as "[t]reating" medical professionals).[8] Accordingly, Defendant's arguments as to the expert reports required pursuant to Rule 26(a)(2)(B) are inapposite.

---

*Desua v. Yokim*, 768 A.2d 56, 59-62 (Md. 2001) (requiring expert testimony to establish a causal relationship between a "simple, rear-end car accident" and a plaintiff's soft tissue neck injury because "there are many reasons why someone might have a neck injury besides a car" accident, such as a diseases like arthritis); *Osunde v. Lewis*, 281 F.R.D. 250, 262 (D. Md. 2012) (requiring expert testimony to link a vehicle accident involving a mother to the premature birth, and subsequent death, of her child four months later because causal link was "beyond the ken of the average juror" (internal quotation marks omitted)).

[8] There is some ambiguity concerning each witness's status as a treating physician, and by

10

Nonetheless, Rule 26(a)(2)(C) requires disclosure of "the subject matter on which the witness is expected to present evidence," and a "summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). Although "[t]his disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)," it must provide more than "'vague generalizations' as to the subject matter of the opinions of the witness[es]." *Keralink, Int'l v. Stradis Healthcare, LLC*, No. CCB-18-2013, 2021 WL 1198150, at *2 (D. Md. Mar. 30, 2021) (quoting *Meredith v. Int'l Marine Underwriters*, No. JKB-10-837, 2011 WL 1466436, at *7 (D. Md. Apr. 18, 2011)); *see also Meredith*, 2011 WL 1466436, at *7 ("The Court understands the rule's reference to 'facts' to include those facts upon which the witness' opinions are based, and 'opinions' to include a precise description of the opinion.").

A sufficient summary may include, for example, the general time period during which the person was treated; the treating physician's conclusions as to what, if any, conditions were or are affecting the patient, the cause of the conditions, the proper scope of treatment, and a general statement as to points of disagreement with any opposing party's expert. A party need not submit

---

extension, as a hybrid witness. "To the extent that a treating physician's testimony is based on facts learned or 'observations made in the normal course of duty,' the treating physician . . . need not submit an expert report." *Barnes v. Costco Wholesale Corp.*, No. JKB-18-3377, 2019 WL 3101605, at *1 (D. Md. Apr. 18, 2019) (quoting *Nat'l R.R. Passenger Corp v. Ry. Exp. LLC*, 268 F.R.D. 211, 216 (D. Md. 2010)). Yet, "a party may not circumvent the requirements of Rule 26 by employing a witness[] like a treating physician . . . to provide testimony extending into classic expert opinion regarding causation and prognosis." *Nat'l R.R. Passenger Corp.*, 268 F.R.D. at 216. Plaintiff provides medical records showing Dr. Edge and Dr. Concepcion treated her following her accident. ECF No. 58-6 (Dr. Edge); ECF No. 58-7 (Dr. Concepcion). However, the record does not contain additional context detailing Plaintiff's relationship with Dr. Fenton, Amanda Bergin, and Dr. Eugenio. Drawing inferences in favor of Plaintiff as the non-moving party, the labeling of these witnesses as "hybrid treating" in her disclosures sufficiently categorizes them for purposes of this motion, particularly when coupled with Defendant's silence with respect to this designation. *Tinsley*, 155 F.3d at 438; ECF No. 58-5.

11

a treatise, or even a detailed, multi-sentence analysis on each of these points, but it must address the relevant points with some degree of specificity unique to the case.

Plaintiff's disclosures and attendant medical records do not meet this standard as they consist of largely repetitive, general statements. With respect to causation, the report includes similar descriptions for all six experts, stating that each will testify that the Plaintiff's injuries to general identified areas of the body "are causally related to the motor vehicle accident that occurred on July 31, 2022." ECF No. 58-5, at 1-4. The only differences between the descriptions for each of the six experts identified are the general region of the body they will address, with several of them addressing the same general areas. *Id.* at 1-3 (stating Dr. Concepcion, Dr. Fenton, and Ms. Bergin will testify "that the Plaintiff's injuries to the lumbar spine, lower limb extremities, and her paresthesia are causally related to the motor vehicle accident"), 3 (stating Dr. Edge "will testify that the Plaintiff's injuries to the lumbar spine, tailbone, and her lower limb extremities are causally related to the motor vehicle accident), 4 (stating Dr. Eugenio "will testify that the Plaintiff's injuries to the lumbar spine are causally related to the motor vehicle accident"). Such a summary "fail[s] to address all of the important aspects of the treating provider[s]' testimony," such as "the relationship, if any, between Plaintiff's present injuries and her previous conditions." *London*, 2023 WL 3727058, at *4. It provides few details about the particular facts or opinions that such witnesses will testify to. Plaintiff's description does little more than convey that "the physicians 'will state [their] opinions in regard to diagnosis, causation, treatment, and prognosis of Plaintiff'"—a formulation that this Court has regularly rejected. *Id.* at 4 (quoting *Grant v. Lowe's Home Ctrs., LLC*, No. DCN-20-764, 2021 WL 5882005, at *7 (D.S.C. Apr. 8, 2021)).

**IV.** **Plaintiff Shall Be Granted Leave to Provide a Summary of Her Expert's Opinions.**

Rule 37(c)(1) dictates that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The appropriate sanction is subject to the Court's discretion and consideration of the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non[-]disclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003); *see also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) ("[The Fourth Circuit] give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." (quoting *id.* at 595)).

All but one of the factors weigh in favor of extending the discovery period and providing Plaintiff the opportunity to supplement the record and cure the deficient expert disclosures. *See London*, 2023 WL 327058, at *7-8. Although Plaintiff's disclosures do not comply with Rule 26(a)(2)(C), they nonetheless offer notice such that Defendant cannot credibly claim surprise as to Plaintiff's reliance on her treating physicians. During Plaintiff's deposition, Defendant specifically inquired as to Plaintiff's treatment at the Pain Consultants of West Florida and Edge Family Chiropractor—the practice settings of Dr. Concepcion and Dr. Edge. ECF No. 58-1, at 14 (Defendant asking several questions related to Edge Family Chiropractic); 16-17, 19 (same, as to Pain Consultants of West Florida). Plaintiff also provided medical records from these professionals in response to interrogatories. *See* ECF No. 58-4, ECF No. 58-1, at 16-17, 19. Moreover, any surprise to Defendant can be cured through a brief extension of the discovery period by twenty-one days, Plaintiff's submission of compliant disclosures, and an opportunity to depose

13

the treating physicians for thirty days thereafter. *See London*, 2023 WL 3727058, at *7 (reasoning any surprise can be addressed through extension of discovery period with summary of expert's opinions and opportunity for deposition). Allowing such a remedy does not disrupt a trial date because the Court has not set one.

As described above, the evidence is crucial to Plaintiff's case. As a matter of law, she cannot establish causation in this case without it. This weighs strongly in favor of extension of the schedule to allow inclusion of the testimony. *London*, 2023 WL 3727058, at *8 (adopting similar remedy where "without the [expert's] evidence, the jury would not have sufficient means to determine whether Plaintiff's complained of injuries were the result of the accident at the center of his case or of other pre-existing conditions"); *Prusin v. Canton's Pearls, LLC*, No. JKB-16-605, 2017 WL 3492163, at *5 (D. Md. Aug. 15, 2017) ("[A] complete exclusion of . . . expert['s] testimony regarding [Defendants'] mandatory service charges would severely harm the Defendants' position and is excessive, given that the Defendants' error can largely be cured without such drastic measures.").

Finally, although Plaintiff's lack of "explanation for [her] failure to provide a [complete] summary of [her hybrid witnesses] opinions cuts against her, this alone is not a basis to deny her the opportunity to supplement the record, and in turn, dismiss her case in its entirety." *London*, 2023 WL 3727058, at *8.

Defendant argues otherwise, requesting exclusion of Plaintiff's experts and entry of summary judgment in his favor. ECF No. 57, at 5-6; ECF No. 59, at 4-5. He cites *Osunde v. Lewis*, 281 F.R.D. 250 (D. Md. 2012), arguing the circumstances are comparable, but they are not. In *Osunde*, a relevant expert's testimony on causation was raised for the first time on the eve of trial. *Id.* at 258. The court reasoned the expert's "testimony would come as a surprise" because

in his deposition, he had "indicated that he had no opinion" on the issue. Moreover, the introducing party was "unable to cure the surprise" because the opposing party lacked sufficient time to examine the expert's opinion and develop counter-testimony due to the tight trial timeline. *Id.* The proposed expert also suffered from terminal illness, rendering him incapable of sitting for a deposition. *Id.* Such circumstances "greatly prejudice[d] Defendant." *Id.* As previously explained, the present case lacks such dire challenges: there is time to remedy any surprise. The more appropriate—and far more common response—in circumstances like this is to allow Plaintiff an opportunity to cure and comply. *London*, 2023 WL 3727058, at *8 (collecting cases "in this circuit where, after balancing the *Southern States* factors, courts have declined to automatically exclude the non-disclosing party's expert witness pursuant to Rule 37(c)").

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment shall be DENIED without prejudice. Plaintiff shall provide a summary of expert opinions as required by Federal Rule of Civil Procedure 26(a)(2)(C) within twenty-one days and make each expert witness available for a deposition within thirty days thereafter. Once this has been completed, Defendant may either designate his own expert, or re-file his Motion for Summary Judgment, raising the same arguments herein and any additional arguments he believes appropriate.

So ordered.

Dated: June 16, 2025                                  /s/
                                                              Ajmel A. Quereshi
                                                              United States Magistrate

15